# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35783-2008

| | | |
|---|---|---|
| **ANEKA D. ALLBRIGHT, n/k/a WAGNER,** | ) | |
| | ) | **Boise, June 2009 Term** |
| **Respondent-Appellant,** | ) | |
| | ) | **2009 Opinion No. 103** |
| **v.** | ) | |
| | ) | **Filed: August 21, 2009** |
| **GREGORY S. ALLBRIGHT,** | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| **Petitioner-Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Bannock County.  The Hon. Gaylen L. Box, Magistrate Judge.

The order of the magistrate court is <u>reversed</u>.

Dennis W. Olley, Pocatello, for appellant.

M. Brent Morgan, Chtd., Pocatello, for respondent.

_____

EISMANN, Chief Justice.

This is an appeal from an order preventing a divorced parent from moving out of state, even without the child.  Because the magistrate court had no authority to make that order, we reverse.

## I.  FACTS AND PROCEDURAL HISTORY

Gregory Allbright (Father) and Aneka Allbright (Mother) were divorced on June 10, 2005, after five years of marriage.  They had one minor child, a daughter (Daughter) born on February 7, 2002.  Mother also had physical custody of a minor daughter (Stepsister) from a prior marriage.

The parties entered into a stipulation resolving issues in their divorce, including child custody.  That stipulation was attached to the divorce decree, approved by the court, and incorporated into the decree.  The stipulation included a provision requiring sixty days notice

before either party moved out of Bannock County if such move would make the parenting plan in the stipulation impractical. In such event, the parties were to negotiate or mediate in an effort to reach agreement upon a new parenting plan, and if they could not do so then the matter was to be decided by the court before any move with Daughter occurred.

Mother remarried in June 2005, and in 2007 her husband lost his employment. He was ultimately able to find suitable employment in Michigan. As required by the stipulation incorporated into the divorce decree, Mother gave Father notice of her intent to move from Bannock County to Michigan. At that time, Mother had physical custody of Daughter about 54% of the time and Father had physical custody about 46% of the time.

On September 10, 2007, Father filed a petition to modify the child custody and child support provisions of the divorce decree based upon Mother's intended move to Michigan. He sought an order awarding primary physical custody of Daughter to him with Mother having periods of physical custody that depended upon how far away she moved.

The parties stipulated that during the pendency of the modification proceedings, the provisions of their divorce decree would remain in effect and that Dr. Kenneth Lindsey would perform a custody evaluation, with each party paying one-half of the cost. The provisions of this stipulation were ordered by the magistrate court on September 27, 2007.

Dr. Lindsey conducted a custody evaluation and issued a written report on February 27, 2008. In his report, Dr. Lindsey recommended that Daughter be permitted to move to Michigan with Mother and that Father be given various periods of visitation both in Idaho and in Michigan that would result in him having physical custody of Daughter about one-third of the time. Dr. Lindsey also suggested that because of the considerable hostility between the parties, the court should appoint a custody manager to assist the parties in negotiating the difficulties that would arise in implementing his proposed visitation arrangement. On March 13, 2008, Mother filed a counterpetition asking the court to modify the custody provisions of the divorce decree to conform to Dr. Lindsey's recommendations.

Apparently dissatisfied with Dr. Lindsey's recommendations, Father asked the court to appoint another child custody evaluator. The court appointed Dr. Nicole Hill and ordered that Father was to pay the cost of her evaluation. After conducting her evaluation, Dr. Hill issued a written report in which she stated that it would be in the best interests of the Daughter to continue the current schedule of visitation, which would be each party having physical custody

about one-half the time. If Mother moved to Michigan, then Dr. Hill recommended that Father be awarded physical custody of Daughter during the academic school year and that Mother have physical custody during the summers.

The matter was then tried on June 30 and August 7, 2008. At the conclusion of the trial, the court asked the parties to submit briefing as to whether the court could order Mother not to move to Michigan. The parties did so, and on September 10, 2008, the court issued its decision. It found that it would substantially derogate Daughter's best interests for Mother to move to Michigan. It denied both petitions to modify custody and ordered Mother to reside in a geographical location that allows continuation of the custody provisions set forth in the divorce decree. Upon the grant of permission pursuant to Idaho Appellate Rule 12.1, Mother timely appealed to this Court.

## II. ISSUES ON APPEAL

1. Did the magistrate court have authority to order that Mother could not move to Michigan?
2. Did the magistrate court abuse its discretion in weighing the testimony of Dr. Hill?
3. Is either party entitled to an award of attorney fees under Idaho Code § 12-121?

## III. ANALYSIS

### A. Did the Magistrate Court Have Authority to Order that Mother Could Not Move to Michigan?

The magistrate court ordered that Mother could not move to Michigan, or anywhere that would be too far away to continue the current sharing of physical custody, regardless of whether she moved without taking Daughter with her. The court's findings and analysis were as follows:

> Under the current custody/visitation schedule both the mother and father typically see [Daughter] on a daily basis. If the mother moves to Michigan with [Daughter], this custody/visitation schedule would not be possible. Due to the very close connection between [Daughter] and her father, and the shared custody/visitation arrangement now existing, any alternative custody/visitation schedule would be inferior and adverse to her best interest. [Daughter] has a very close, comfortable, secure, caring and loving relationship with both of her parents. According to Dr. Hill, she is "thriving", which is a testament to both of her parents. Maintaining the stability and continuity of this relationship is critical for [Daughter], especially at her young age. A qualitative change in that relationship

would have the potential of negatively impacting [Daughter] (Dr. Hill report). [Mother] has another child from another marriage, 11 year old [Stepsister]. [Daughter] is very close to [Stepsister]. Should the mother move to Michigan and [Daughter] stay here she would be deprived of this sisterly bond and relationship with [Stepsister]. [Daughter] is well adjusted in her current environment, including community and school. Many of [Daughter's] extended family members live here and provide her with a high level of support. If [Daughter] moved to Michigan she would lose that family support.

In this case the mother has failed to prove that disrupting the current custody/visitation arrangement in order for her to move to Michigan is in [Daughter's] best interest. In fact, the court finds that, should the mother relocate, it would substantially derogate the best interest of [Daughter]. Both motions to modify are denied. The mother is ordered to reside in a geographical location that allows the continuation of the custody/visitation schedule set forth in the Decree of Divorce.

The issue is whether the magistrate court had authority to order that Mother live within a specific geographical location so that both parents could continue having frequent contact with and physical custody of their child. This appeal does not involve the issue of whether Mother should be permitted to move to Michigan with Daughter.

Father argues that the court's authority is bounded only by the best interests of Daughter. During oral argument, Father asserted that if it was in the best interests of the child, a court could order the divorced parents to live next door to each other, or even to share the same residence. He stopped short, however, of stating that the court could order parents not to get divorced even if such order was in the child's best interests.

A court's authority in a divorce action is not conterminous with what the court determines to be the best interests of the child. Idaho Code § 32-717(1) provides, "In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children." The statute authorizes the court to give direction for the custody, care, and education of the child. It does not authorize a court to decide the geographic area in which the parent or parents of the child shall live.

The magistrate court in this case found support for its order in the following quotation from *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003):

In Idaho, the best interests of the children is always the paramount concern. Therefore, in any judicial determination regarding the custody of children, including where they reside, the best interests of the child should be the standard

4

and primary consideration. In addition, Idaho favors the active participation of both parents in raising children after divorce, which policy is reflected in I.C. § 32-717B supporting joint custody. For these reasons, in Idaho, the moving parent has the burden of proving relocation would be in the best interests of the child before moving in violation of a previous custody arrangement.

The magistrate court erred by taking the above quotation out of context. In *Roberts*, we did write that "the moving parent has the burden of proving *relocation* would be in the best interests of the child before moving in violation of a previous custody arrangement." (Emphasis added.) The "relocation" at issue in *Roberts* was not the relocation of the parent. It was the relocation of the children.

In *Roberts*, the parties' agreed-upon "Parenting Plan" provided, "Wife shall reside in Cassia or Minidoka County and will not permanently remove the children from either of said counties without the written consent of Husband or prior court order." 138 Idaho at 403, 64 P.3d at 329. The mother later wanted to move 160 miles away to Boise in Ada County in order to be with her fiancé. The magistrate court in *Roberts* did not order that the mother could not relocate to Boise. It ordered that if she did relocate to Boise, she could not take the children with her. We affirmed the magistrate, stating that "there was no abuse of discretion in determining that Kimberly [the mother] was not free to move the children, the children should remain in Burley, and, if Kimberly chose to relocate to Boise, the children should stay with Larry [the father] in Burley." 138 Idaho at 405, 64 P.3d at 331. Thus, *Roberts* is not authority for the proposition that the court in a divorce action has the authority to determine the geographic area in which either or both parents will reside. It can determine with which parent the child will reside, but it cannot determine where either parent will reside.

The magistrate court also cited Idaho Rule of Civil Procedure 65(g) in its decision. It wrote:

Modification of the custody order is secondary to the determination of whether the mother should be allowed to disrupt the existing custody/visitation arrangement by moving to Michigan. The court has clear authority to decide that issue. Idaho Rule of Civil Procedure 65(g) allows the court to make such orders, mandatory or prohibitive, as are just.

Again, the magistrate court failed to read the Rule in its context. Rule 65(g) does not grant a court authority to make any order it believes to be just.

5

Rule 65 of the Idaho Rules of Civil Procedure sets forth the procedures for obtaining a temporary restraining order and a preliminary injunction. Subsection (b) limits the circumstances under which a temporary restraining order can be issued without notice to the adverse party. It can be issued without notice only if it "clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or the party's attorney can be heard in opposition." Subsection (c) requires an applicant for a restraining order or preliminary injunction to provide security "for the payment of such costs and damages including reasonable attorney's fees to be fixed by the court, as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Subsection (g) simply exempts certain domestic relations cases from these two requirements. It states, "In suits for divorce, annulment, alimony, separate maintenance or custody of children, the court may make prohibitive or mandatory orders, with or without notice or bond as may be just." The phrase "as may be just" modifies "with or without notice or bond." Thus, in *Overman v. Overman*, 102 Idaho 235, 239, 629 P.2d 127, 131 (1980), we held, "I.R.C.P. 65(g) specifically provides that the court may preliminarily enter ex parte orders in child custody matters if necessary to assure just resolution of a dispute."

A court presiding over a child custody matter does not become a family czar with unlimited authority to order the parents to do anything that the court believes is in the best interests of the child. The court's authority comes from Idaho Code § 32-717. *Overman*, 102 Idaho at 239, 629 P.2d at 131 (citing former Idaho Code § 32-705 which provided, "In an action for divorce the court may, before or after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may at any time vacate or modify the same").

There is no doubt that it would be in the best interests of Daughter for her parents to live in close enough proximity that they can both have frequent and continuing contact with and physical custody of her. "Idaho favors the active participation of both parents in raising children after divorce, which policy is reflected in I.C. § 32-717B supporting joint custody." *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003). However, the magistrate court had no authority to order Mother to reside in any particular geographical location. We therefore reverse the order of the magistrate.

6

**B.  Did the Magistrate Court Abuse Its Discretion in Weighing the Testimony of Dr. Hill?**

Dr. Hill's written report was admitted into evidence without objection.  During the trial, Mother stated that she had no objection to Dr. Hill testifying as an expert "relative to the issues of legal and physical custody that's in the best interest of this minor child," and Mother did not object to any of her opinions regarding the best interests of Daughter.  On appeal, Mother contends that the magistrate court gave too much weight to Dr. Hill's opinions.

In its decision, the magistrate court quoted from and referred to Dr. Hill's written report in which she stated that it would be in the best interests of Daughter to preserve the current visitation schedule.  Whether or not the court placed too much reliance upon that opinion is now moot.

The magistrate also noted in its decision, "Should the mother move, Dr. Hill recommends custody revert to the father."  Mother asks on appeal that we opine as to the weight the magistrate court should give that opinion on remand.  We will not do so.

**C.  Is Either Party Entitled to an Award of Attorney Fees Under Idaho Code § 12-121?**

Both parties seek an award of attorney fees pursuant to Idaho Code § 12-121.  Attorney fees can be awarded to the prevailing party on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation.  Father is not the prevailing party on appeal, and therefore he cannot be awarded attorney fees under that statute.  Because we have never before addressed the issue of whether a court has the authority to prevent a parent from relocating, we do not find that Father defended this appeal frivolously, unreasonably, or without foundation.  We therefore decline to award Mother attorney fees on appeal.

## IV.  CONCLUSION

The order of the magistrate court is reversed and this case is remanded for further proceedings that are consistent with this opinion.  We award costs on appeal, but not attorney fees, to the appellant.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.

7