# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 39188

CHARLES MALCOM CLAIR, JR., )
)
    Plaintiff-Respondent, )    **Boise, June 2012 Term**
)
v. )    **2012 Opinion No. 110**
)
TRACY JO CLAIR, )    **Filed: July 6, 2012**
)
    Defendant-Appellant. )    **Stephen W. Kenyon, Clerk**
)
)

---

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Rudolph Enrico Carnaroli, Magistrate Judge.

Magistrate Court decision in divorce action and child custody, <u>affirmed.</u>

Nick L. Nielson, Pocatello, argued for appellant.

Belzer Law Office, Pocatello, for respondent. Frederick F. Belzer argued.

Myers Law Office, PLLC, Pocatello, for respondent.

---

BURDICK, Chief Justice

This case concerns the divorce action between Appellant Tracy Jo Clair (Tracy) and Respondent Charles M. Clair, Jr. (Charles). At issue is the magistrate court's decision finding in the best interest of Tracy's and Charles's child to reside primarily in Pocatello, Idaho. The custody plan contained alternative options depending on whether and when Tracy would relocate back to the Pocatello area after moving to Ely, Nevada, following the couple's separation. Additionally, we address an issue concerning the introduction of the custody evaluator's opinions regarding an acceptable custody arrangement. Based upon the facts of this case we affirm the magistrate court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Charles and Tracy were married on November 19, 1993, in Ely, Nevada. C.C., the parties' only natural child, was born in 2007, in Reno, Nevada. In June 2010, the parties separated near the time that Charles took a new job as a physician in Moscow, Idaho, after

serving his residency in Pocatello, Idaho, at the Family Practice Residency Department at Idaho State University. Upon separation, Tracy and C.C. moved to Ely, Nevada, to live with her parents.

Charles filed a complaint for divorce on July 19, 2010, in Bannock County, Idaho, claiming irreconcilable differences. Tracy filed a complaint for divorce in Latah County, Idaho, on July 22, 2010, citing irreconcilable differences pursuant to I.C. § 32-603(8). The parties stipulated to the consolidation of the complaints into the case in Bannock County and agreed to treat Tracy's complaint as a counterclaim. During this period, the magistrate court filed an order prohibiting the parties from removing the child from the state without leave of the court. This order was not observed by Tracy, nor sought to be enforced by Charles. On January 19, 2011, the magistrate court agreed to the parties' stipulation and filed an order allowing Linwood Vereen, Ph.D. to perform a custody evaluation for the determination of the best custody arrangement. Four months later the magistrate court set the matter for trial, and in June 2011, granted the parties a decree of legal separation. In the time between the initial filings and the date of trial, the magistrate court agreed to several stipulations between the parties for monthly custody arrangements. The trial took place June 1-3, and July 21-22, 2011. The magistrate court filed its Findings of Fact Conclusions of Law and Order on August 16, 2011. The magistrate judge found that Tracy has a B.S. in English from Weber State University and a B.S. in English Education from Utah Valley State College, with certifications to teach, and teaching experience, in both Idaho and Nevada. Tracy's teaching experience included a two-year, full-time position at Pocatello High School. Next, the court found that Tracy had applied for teaching positions in Nevada, and before the trial, received an offer from a school in Reno that she intended to accept. The magistrate judge also found that Tracy intended to remain a resident of Nevada and have C.C. reside primarily with her. Finally, the court found that after the separation, Tracy had "motivational issues" for several months; that during separation, she had "limited the father's access to the child and . . . made arranging visits between father and son more difficult than it should have been"; and that in Tracy's opinion, C.C. suffered from separation anxiety and should not be away from her for visits as long as the father had proposed. As for Charles, the magistrate court found that he had purchased a home in Pocatello, three blocks from the public school C.C. would begin to attend; that he had paid the majority of costs for support, debts, and obligations during the separation; and that he had proposed to pay a sum for child support larger than what

2

was required of him if Tracy would relocate to Pocatello and share custody with him on a weekly basis—a proposal that was rejected by Tracy. The court further stated:

> The father has sacrificed financially to be able to spend time with his son and to be a part of his son's life. The father gave up a job in Moscow, Idaho to move closer to [C.C.]. He gave up a $40,000.00 bonus to move to Moscow and take the position he had, $30,000.00 of which he and the mother received and spent and which he must repay. He gave up student loan debt forgiveness that would have erased approximately $223,000.00 in student loan debt over the next eight years. The Moscow position was in an underserved rural area and his position in Pocatello is not. He will not receive student loan debt forgiveness in Pocatello. He gave up an annual salary of $225,000.00 to take a faculty position with Idaho State University for an annual salary of $156,000.00.

The counselor that performed the custody evaluation for the parties, Linwood Vereen, Ph.D., LPC, testified at trial. His evaluation was based on interviews with the parents, parent-child observations, home visits, and discussions with contacts provided by the parties. Dr. Vereen testified that both parents were effective and had demonstrated a loving relationship with C.C. Dr. Vereen's testimony regarding recommendations for parenting time and the best interests of the child were not permitted into evidence pursuant to I.R.E. 702 for lack of foundation. The parties did not stipulate that he could offer expert opinion testimony at trial.

The magistrate court divided the community property and debts pursuant to an agreement between the parties and held that it was in the best interests of the child to remain in Idaho under a shared custody arrangement. Based upon a finding that Tracy did not prove by a preponderance of the evidence that it was in C.C.'s best interest to move to Nevada with her, the magistrate court created a custody arrangement with alternative plans depending on Tracy's decision whether she would relocate to the Pocatello area. First, if Tracy returned to the Pocatello area within 120 days of the court's order, the custody would be shared on a 65/35% basis in favor of Tracy, with Charles paying $1,016 in monthly child support. Next, if Tracy returned after four months, but within a year, the physical custody would be evenly split between the parties, and Charles would be required to pay $677 per month in child support. Finally, if Tracy remained in Nevada, a custody agreement would be structured around C.C. staying with his father during the school year and with his mother during the summer months, with the mother paying a child support payment of $244 per month. A judgment and decree of divorce was filed on August 16, 2011, reflecting these provisions for the legal and physical custody.

3

The parties had conflicting interpretations of the court's order, and subsequent to a hearing, the magistrate entered amended filings on August 25, 2011, making clear that the custody option for a 65/35% split would begin at the time of Tracy's arrival in Pocatello. Tracy filed a motion to stay portions of the amended judgment, seeking to allow C.C. to stay with her until she could find work in the Pocatello area and save up enough money to relocate; she also asked that the radius for relocating be extended beyond Pocatello to Twin Falls. Subsequent to a post-judgment hearing held at the behest of Tracy, the magistrate court filed a second amended order and judgment. The magistrate court addressed some of the mother's previously stated concerns including a clerical error and changing all references to the child from the child's first and last name to "C.C." The magistrate court also amended the dates to allow Tracy an additional month to return to Pocatello for the 65/35% custody split as she had already leased a home in Reno, and the winter break at the school from which she accepted a teaching position did not begin until the day after the initial 120 day deadline. Tracy timely appealed from the seconded amended judgment to the Supreme Court.

## II. STANDARD OF REVIEW

Child custody determinations made by a magistrate court are reviewed by this Court under an abuse of discretion standard. *Schneider v. Schneider*, 151 Idaho 415, 420, 258 P.3d 350, 355 (2011) (citing *Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1055 (2003)). Under this standard of review, the Court asks first whether the magistrate court correctly perceived the custody issue as one of discretion; then whether the magistrate court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to the court; and finally, whether the magistrate court reached its decision by an exercise of reason. *Schultz v. Schultz*, 145 Idaho 859, 861-62, 187 P.3d 1234, 1236-37 (2008). An abuse of discretion is found when the magistrate court's "findings are clearly erroneous such that the court's findings are not based on substantial and competent evidence." *Schneider*, 151 Idaho at 420, 258 P.3d at 355. In a decision regarding a custody award or modification, "[a]n abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served" by the magistrate court's order. *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007).

4

For issues involving the introduction of evidence, this Court also reviews the trial court's decision under an abuse of discretion standard. *State v. Perry*, 139 Idaho 520, 521, 81 P.3d 1230, 1231 (2003). The trial court has broad discretion to admit or exclude evidence, and to determine whether a witness is qualified as an expert. *Id.* at 521-22, 81 P.3d at 1231-32. "Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party is affected." *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995).

## III.   ANALYSIS

### A. The magistrate court's order of child custody was not an abuse of discretion.

The first issue that we address regards the magistrate court's order concluding that C.C.'s primary residence should be in Pocatello, and the custody arrangement based on that conclusion. Tracy argues that the magistrate court created a custody schedule that promoted estrangement between C.C. and his mother and deprived her child of the solid bond that was formed between the two during the first years of C.C.'s life. Charles argues that the magistrate court did not abuse its discretion because it made a decision based on the best interest of the child. We find that the magistrate court's order was not an abuse of its discretion.

For determinations of custody, a magistrate court is required to base its decision on the best interests of the child. *Schultz*, 145 Idaho at 862, 187 P.3d at 1237 ("the best interest of the child is of paramount importance in custody determinations"). Idaho Code section 32-717(1)(a)-(g) sets out a non-exhaustive list of relevant factors that a magistrate court may consider. This list includes the wishes of the child's parents as to custody; the child's wishes for custody; the interaction and interrelationship between the child and parents, and siblings if applicable; the child's adjustment to his or her community; the character and circumstances of all involved; the need to promote continuity and stability for the child; and any instance of domestic violence.[1] I.C. § 32-717(1)(a)-(g). "This list of factors is not exhaustive or mandatory and courts are free to consider other factors that may be relevant." *Bartosz v. Jones*, 146 Idaho 449, 454, 197 P.3d 310, 315 (2008). Additionally, the preference for the mother as custodian over the father of a child of "tender years" is considered only where all other considerations are found to be equal. *Moye v. Moye*, 102 Idaho 170, 172-73, 627 P.2d 799, 801-02 (1981). The magistrate court considered each one of the factors set out in I.C. § 32-717(1) with findings and conclusions for

---

[1] No allegations of domestic violence between the parties are present in this case.

5

each listed factor. The magistrate court concluded that it would be in the best interest of the child to remain in Idaho with C.C.'s parents sharing custody. The magistrate court reasoned that the temporary living arrangements that followed separation were not in the child's best interest, and that it was the court's responsibility, not the parents, to examine where C.C. should live in the future.

Finding that the mother did not prove by a preponderance of the evidence that it was in C.C.'s best interest to move to Reno, the court concluded that it was in the best interest of the child to remain in the Pocatello area where the father relocated for the benefit of C.C. As to the parents' wishes, the court concluded that:

> [T]he wishes of the parents are inconsistent, are not supported by the evidence and . . . their wishes and proposals do not promote the best interests of the child. The parents' wishes and proposals for custody do not really assist the court in determining the child's best interests other than the fact that the father is apparently willing to share custody with the mother if she remains in Idaho. Shared custody in Pocatello would be the best choice for C.C.

As for the child's wishes, the magistrate court found that the child was too young to make a clear indication of a custodial preference to assist the court. The magistrate court concluded that the interrelationship between the child and parents, and the child's adjustment to home, school, and community favored shared custody in Idaho because a move to Reno with Tracy would not have a positive effect on C.C.'s relationship with Charles. Also, the magistrate court reasoned that the proposed move from Ely to Reno by Tracy would be to a community unknown to C.C., whereas, C.C. had spent most of his life in Pocatello, and was already familiar with Charles' new home and the child care providers in Pocatello. C.C. would be unfamiliar with the surroundings if Tracy moved to Reno. The conclusions for the promotion of continuity and stability in C.C.'s life also focused on Tracy relocating to Reno. The magistrate court reasoned that custody in Pocatello would promote more continuity and stability in C.C.'s life because of familiarity with the area—a "stable known environment."

The factor that gave the magistrate court the most concern was the character of the parties and circumstances surrounding the case. Finding that Tracy had demonstrated a tendency to withhold access to their child and that her emotional response to the separation hindered her ability to think and act as a shared-custodial parent, the magistrate court stated a hope that Tracy could focus on the emotional needs of the child, and not her own, to allow for a successful shared custody arrangement. The court concluded that both parents were very capable of being loving

6

parents for C.C. and that the analysis of the best interests of the child indicated that the ideal arrangement would be living in Pocatello with both parents nearby to share an overnight custody rotation. Custodial alternatives were constructed in hopes of relieving the parties from further court hearings in the future in the event that Tracy did not immediately return to Pocatello.

The magistrate court's order shows that it considered all relevant evidence in the record and applied relevant factors to make a decision based on the best interests of C.C. The order does not suggest that the magistrate court was separating the child from Tracy or was trying to damage the relationship and bond between the two as Tracy argues. The magistrate court's order illustrates that the magistrate judge was trying to make the best decision available to ensure a significant relationship continued to exist between C.C. and Tracy, as well as Charles. Tracy's arguments do not go beyond analysis of the total amount of days that each parent would receive with C.C. under the alternative plans and do not contain any citation to authority that would require the magistrate court to divide the time evenly (or to the benefit of the mother) regardless of the hardship to the child. As we have often stated, a shared physical custody has no predetermined visitation ratio but is driven by statutory analysis, best interests of the child, and finally the court's reasoned discretion. Idaho Code § 32-717B(2); *King v. King*, 137 Idaho 438, 445, 50 P.3d 453, 460 (2002).

According to the magistrate judge, the best option was to have the child reside in Pocatello with both parents living in the area, but he also understood that this option may not be available immediately and, therefore, specified alternative arrangements. For this Court to find that an abuse of discretion has occurred in a custody award, the record must be void of evidence to support the magistrate court's conclusion that the custody award served the best interests of the child. *Schultz,* 145 Idaho at 863, 187 P.3d at 1238 (citing *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981)). "Under Idaho law, it is presumed that a continuing relationship with both parents is in the child's best interest." *Id.* at 865, 187 P.3d at 1240. The record and the magistrate court's order reflect that the custody arrangement was created with the child's best interests in mind, attempting to achieve a continuing relationship with both parents. The magistrate court reflected on each of the relevant factors listed in I.C. § 32-717(1) in its order and did not over-emphasize any one factor. *See id.* at 863, 187 P.3d at 1238. The custodial arrangement was within the magistrate court's discretion and was consistent with applicable legal standards. Also, the facts and legal analysis in the magistrate court's order indicates that

the decision was reached through an exercise of reason, and there was sufficient evidence to support the magistrate court's conclusion. Therefore, we find that the magistrate court did not abuse its discretion by ordering shared child custody based on C.C. residing in Pocatello.

## B. The magistrate court's custody determination did not infringe on Tracy's liberty interests to choose where to live, work, and raise her son.

Next, we address Tracy's argument regarding whether the magistrate court's decision infringed upon her liberty interests. Tracy argues that the magistrate court abused its discretion when it degraded Tracy's choice of moving to Reno and that it was without authority to force Tracy to live within 25 miles of Charles if she wished to maintain frequent contact with C.C. Charles argues that Tracy's rights were not violated because the decision was based on the best interests of their child. We find that the magistrate court's determination that C.C. should live primarily in Pocatello was within its discretion and did not infringe upon Tracy's liberty interests.

As stated above, the best interests of a child are the driving force behind a custodial determination by a magistrate court. In a divorce action where the custody of children is at issue, a court does not have the authority to order where the parents shall live. *Allbright v. Allbright,* 147 Idaho 752, 754, 215 P.3d 472, 474 (2009). However, the court is given the authority to determine with which parent physical custody will be granted. *Id.* at 755, 215 P.3d at 475. If a unilateral move out of state by one parent with the child is a factor in a custody case, the relocating parent can be awarded physical custody only where he or she proves by a preponderance of the evidence that the move is in the child's best interests. *Danti v. Danti,* 146 Idaho 929, 935, 204 P.3d 1140, 1146 (2009). While a lower court must address a unilateral move in its findings, it is not required to grant physical custody to either parent based purely on that move. *Navarro v. Yonkers,* 144 Idaho 882, 888, 173 P.3d 1141, 1147 (2007). Further, because of the presumption reflected in I.C. § 32-717B favoring the active participation of both parents, "it is presumed that it is not in the child's best interests to permit one parent to unilaterally remove a child from the community where the parents and child resided when such move prevents the other parent from having frequent and continuing contact with the child." *Id.* at 889, 173 P.3d at 1148 (Eismann, C.J., specially concurring).

While Tracy concedes that the magistrate court did not expressly order her to live in Pocatello, she argues that in effect the magistrate court's order did force her to live within 25 miles of Pocatello. She argues that this case is similar to *Allbright v. Allbright,* where the Court

8

held that the magistrate court had no authority to order the mother to reside in a specific geographical location. 147 Idaho at 756, 215 P.3d at 476. Although *Allbright* does include explicit language that states I.C. § 32-717(1) "does not authorize a court to decide the geographic area in which the parent or parents of the child shall live," it does not supersede the magistrate court's discretion in the best interest of the child to "determine with which parent the child will reside." *Id.* at 754-55, 215 P.3d at 474-75.

The magistrate court did not order Tracy to return to the Pocatello area or mandate that she live there—it found that in was in the best interests of the child to reside in Pocatello and structured the custody arrangement around that finding. Additionally, the magistrate court found that Tracy "did not prove by a preponderance of the evidence that it [was in] C.C.'s best interests to move from Idaho with her." The provisions for the legal and physical custody of C.C. included options for Tracy to remain in Nevada or return to the Pocatello area; it did not order Tracy to return to Pocatello. The custody agreement gave her the opportunity to have "frequent and continuing contact" with her child, and the magistrate court left to her the decision of how frequent she desired that contact to be. *See Navarro,* 144 Idaho at 889, 173 P.3d at 1148 (Eismann, C.J., specially concurring). Her arguments do not cite to any authority that would require this Court to find that the magistrate court's discretionary decision violated her right to live and work in Nevada. The magistrate court's custody arrangement explicitly included an alternative section contemplating that she may choose to stay in Nevada.

Also, Tracy has not shown that the magistrate court's findings and conclusions regarding the factors in I.C. § 32-717(1) for custody were used to punish Tracy or reward Charles as Tracy contends. *See Kalousek v. Kalousek,* 77 Idaho 433, 439, 293 P.2d 953, 957 (1956) ("Custody of children in divorce cases must always be determined upon the basis of the welfare of the children. It cannot be used as a means of punishment or reward of either parent.") As evidence of such punishment, Tracy cites to one phrase used by the magistrate court: "Twelve months gives [Tracy] time to decide if living in Reno is more important to her than being a regular presence in [C.C.'s] life in Pocatello." That phrase merely stated the obvious and was based upon this Court's previous case law. *See, e.g., Bartosz v. Jones,* 146 Idaho 449, 464, 197 P.3d 310, 325 (2008) (Eismann, C.J., concurring) ("A parent can decide that other things in the parent's life are more important than maintaining a close relationship with the child, and move away. The court cannot prevent a parent from doing so.")

9

Any suggestion of punishment can be quelled by the magistrate court's reasoning for the alternative plans. Although Tracy would not be rewarded with as high of a percentage of custody if she returned after the initial 120 days following the court's order than if she relocated to Pocatello before that date, the magistrate court provides reasoning that was based on the child's best interests. The magistrate court cites the difficulty that the transition to an equal shared custody arrangement, after an extended period of time, would impose on the child and stresses the probable disruption to the continuity and stability of the child's life if the mother chose to return at a later date. "If the mother does not relocate to Pocatello within a year of the entry of the decree of divorce, it is unfair to C.C. to have any switch in the custody schedule that ignores the father's efforts to be the primary care giver and the routine that has been established for C.C. here in Pocatello absent a showing of a substantial, material change in circumstances."

Granted, the separation was not easy for Tracy, but this does not mean that the magistrate court is required to consider Tracy's interests above the best interests of C.C. As discussed above, the magistrate court correctly based its decision for custody on the child's best interests. This includes the magistrate court's analysis of the possibility of C.C.'s relocation to Reno with Tracy—it did not abuse its discretion by finding that Tracy had not met her burden of showing that relocation was in C.C.'s best interests. Since Tracy failed to meet her burden and has not shown how her liberty interests outweigh C.C.'s best interests, we find that the magistrate court's custody arrangement based on C.C. residing in Pocatello did not violate any protected liberty interests of the mother.

## C. The magistrate court did not abuse its discretion by disallowing the opinions of Dr. Vereen regarding recommendations for parenting time pursuant to I.R.E. 702.

Finally, we address the issue regarding the magistrate court's decision to limit the custody evaluator's testimony. Tracy argues that the magistrate court demanded criteria for Dr. Vereen's expert opinion testimony that has not yet been recognized by Idaho as necessary for the admissibility of a custody determination, because Idaho has not of yet required scientific data for the admission of the ultimate opinions regarding custody arrangements. Charles argues that Tracy failed to preserve her objection to the doctor's recommended custody schedule because she did not provide an offer of proof regarding the content of the excluded report and testimony. In this case, we find that the magistrate court did not abuse its discretion when it limited some of Dr. Vereen's opinion testimony regarding custodial arrangements for a lack of foundation.

10

Rule 702 of the Idaho Rules of Evidence states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

> The test for determining whether a witness is qualified as an expert is 'not rigid' and can be found in Idaho Rule of Evidence 702. Idaho Rule of Evidence 702 states:
>
>> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> A qualified expert is one who possesses 'knowledge, skill, experience, training, or education.' Formal training is not necessary, but practical experience or special knowledge must be shown to bring a witness within the category of an expert. The proponent of the testimony must lay foundational evidence showing that the individual is qualified as an expert on the topic of his or her testimony.

*Weeks v. E. Idaho Health Servs.*, 143 Idaho 834, 837, 153 P.3d 1180, 1183 (2007) (internal citations omitted).

Upon objection by counsel, the magistrate court ruled from the bench that Dr. Vereen was unable to testify as an expert on a specific custody schedule or custody split, but allowed his expert testimony regarding child development and attachment. This ruling was based on a lack of foundation. *See Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 593, 67 P.3d 68, 72 (2003) ("[T]he trial court has the discretion to determine whether a proper foundation has been laid for the admission of expert testimony . . . .")

> The foundation for some opinion testimony at this point is lacking in my view because I don't think we quite got there to whether there are or are not commonly accepted criteria or standards in the counseling field on how to conduct a child custody evaluation whether nationally or locally. Our State Legislature and our Supreme Court has not gone along yet with the Association of Family and Conciliation Courts to adopt the model Standards of Practice. I don't know at this juncture what the American Psychological Association or any other national association say the guidelines for the conduct of child custody evaluations are or what they should be in comparison to what Dr. Vereen has done here. So, I don't know that we can get to his opinions yet based on what we have of record concerning the ultimate issues of percentages of custody time or what's in [C.C.'s] best interests.
>
> . . . .

11

Dr. Vereen certainly has education, experience and training that this Court does not have in the areas of child development and attachment, particularly in the area of children age zero to six. So there may be some opinions he can render and some testimony he can render concerning [C.C.] in those areas that don't necessarily reach what's the right mix of two weeks versus, you know, how many weeks with one parent or the other and what the exchanges ought to be. They might not reach an ultimate opinion on what's in the best interests of [C.C.], what custody arrangement, but he can certainly give me, I think, some opinion evidence concerning the issues of attachment and child development within the context of the evaluation that he's done. So, I'm not going to say throw the baby out with the bath water on this one. It's just getting to what he feels is best in terms of number of weeks here and there or primarily with who or whom.

. . . .

Okay, we need some more foundation if you want to get to the areas where you need to go or where you want to go or to get the [custodial evaluation] in unredacted. So, I'm going to sustain the objection on foundation to get there. I will accept Dr. Vereen as an expert who has, based on what you've set forth so far, in the area of child development and attachment in children ages zero to six and I think he may have some information both factual and opinion wise that might help me in making a decision of what's right for [C.C.].

The magistrate court expounded further on the subject when asked for clarification.

Just so we're clear. It's not that I don't believe that Dr. Vereen has the specialized knowledge . . . that supports rendering an opinion on the ultimate issue. He has certainly greater specialized knowledge and training in the areas that I've highlighted, which you actually highlighted in laying the foundation to try and get what you want in . . . and that's you want the full [custodial evaluation] and the opinion on the ultimate issue. What I'm saying is that to meet the test of our foundational rules, we have to, I think the field of child custody evaluations has to either get us an evidentiary rule changed to relax the standards that are in the Rule 700 series or you get a few bites out of the apple, but you don't get the ultimate issue. . . . [T]he expert opinions that I've received in the past . . . have come in without objection. This is the day that we're getting the objection to foundation and I'm struggling with it as are you, but I think Dr. Vereen [can testify], if in [C.C.'s] case he can provide some testimony based on time spent with your two clients and with [C.C.] to talk about attachment or child development issues with [C.C.] and what he foresees in the future as problems or no problems based upon the literature that's generally accepted. You can get so far into it, but it's not that important for me to know what schedule Dr. Vereen thin[k]s will work. It's not important because there's really no standards out there in the field, you know, that he can follow some formula to say two weeks in or two weeks in one week out is superior to one or the other because there's no empirical studies to back those kind of judgment calls being made up. That I don't have unless . . . there's been something that's come out in the field [in the last ten months] that says, 'This is the formula we follow to come up with the recommendations on custody sharing time.' I don't know that it's there because you haven't drawn that out of this witness to say, 'The field says in this situation

12

with these set of facts, the child should be more with mom or more with dad.' Attachment's going to be a big issue in my mind, just on what little I know of attachment and what I've just learned just now with one parent living way over in Ely or Reno, Nevada and another here in Pocatello. If you want [to] explore those issues, I thin[k] you have enough foundation to go into attachment or bonding . . . but the number of weeks in one household or the other or whose household is better, I don't think there had been foundation laid to get to those kind of opinions yet and I am not going to assume you can't lay it, but at this point, it's not there. It might be the nature of the beast that we're talking about. How far can you go with opinion testimony in this particular circumstance in these family dynamics where parents are breaking up and the child has to live in two homes?

. . . .

[W]e have been going through his qualifications as an expert and we haven't even gotten to the foundation for any opinions in terms of what he has done with this family. We've been outside the area. We've touched on it a little bit. He visited Mrs. Clair and the child at home, the length of time that he was there, what was done, etc. etc. I mean, the factual foundation is not there to get to an opinion yet and given where we are in this particular area of expert testimony, I'm not going to allow you to, as the gatekeeper of the evidence, . . . I'm not going to allow you to just say, 'Okay, opine, Dr. Vereen and then we'll let [opposing counsel] pick it apart on cross-examination.' The foundation objection is there. You're going to have to lay the foundation on what it is you want to get and then as it comes up and if you ask a question, 'Well, how many weeks should the child spend in which home,' he'll get an opportunity to object and I'll make a ruling at that time, but I need factual foundation before I can go anywhere. I'm satisfied Dr. Vereen is an expert witness in child development whose opinions can assist me as a trier of fact in specialized knowledge that I don't have.

During Dr. Vereen's testimony, the magistrate court sustained objections from Charles's attorney to the questions regarding shared custody arrangements. Tracy's attorney did not make any offer of proof regarding what Dr. Vereen may have said, or what was in the custody report regarding Dr. Vereen's opinion on the appropriate custody split. Additionally, no offer of proof was made after the magistrate court suggested that counsel may want to do so should objections arise.

### 1. Failure to make an offer of proof overcome by evidence in the record.

Charles argues on appeal that Tracy failed to preserve this issue on appeal because her counsel failed to make an offer of proof regarding Dr. Vereen's opinions on the custody split between the parties. Charles cites to Rule 103(a)(2)[2] of the Idaho Rules of Evidence, *State v.*

---

[2] Rule 103(a) of the Idaho Rules of Evidence states:

(a) **Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

*Young*, 136 Idaho 113, 120, 29 P.3d 949, 956 (2001), and *Morris v. Thomson*, 130 Idaho 138, 143, 937 P.2d 1212, 1217 (1997). Charles is correct that Rule 103(a)(2), *Young*, and *Morris* stand for the requirement that absent an offer of proof, the claim of error, based on the exclusion of evidence by a trial court cannot be preserved on appeal. However, many decisions stating the purpose of the rule when it comes to an appeal draw attention to the importance of making a record for the appeal. *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 251, 245 P.3d 992, 1003 (2010) ("The purpose of this rule is to preserve a record for appeal . . . ."); *State v. Joslin*, 145 Idaho 75, 82, 175 P.3d 764, 771 (2007) ("The purpose of an offer of proof is to make a record either for appeal or to enable the court to rule on the admissibility of proffered evidence."). The distinction is highlighted here because in the present case the record contains the information that was excluded by the magistrate court.

Dr. Vereen's custody evaluation contained a section titled "Recommendations." The custody evaluation was admitted by the magistrate court, but a portion of the "Recommendations" section was redacted. The redacted section included Dr. Vereen's opinion of the custody plan he envisioned for the parties. Charles's attorney quoted the language redacted from the custody evaluation in an argument before the magistrate court challenging the bias of Dr. Vereen. Charles's attorney read the following language from the report to the magistrate court:

> The parties should institute a parenting time plan that has the child in the care of Ms. Clair for four consecutive weeks followed by 2.5 consecutive weeks with Mr. Clair. This arrangement would allow the minor child consistent access to both parents on a regular basis and increase the opportunity for continuity and stability. The parties should focus on developing a parenting time arrangement that allows each party the opportunity for liberal time with the child.
> . . . .
> Therefore, transitioning to a more shared model of parenting time should be considered as the child matures. While it would be advantageous for all parties involved to have parent/child contact occur with more regularity and less time between parenting opportunities the distance between homes and the travel involved would begin to strain both parties and has the potential for a negative impact on the minor child.

---

(1) **Objection.** In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

(2) **Offer of Proof.** In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Also, there was no objection when Tracy testified that she believed the best custody arrangement for C.C. would be as Dr. Vereen had recommended in the redacted portion of the custodial evaluation—a custody split that proposed four weeks with Tracy and then two and a half weeks with Charles. Additionally, Charles admitted in his Respondent's Brief that Dr. Vereen's custodial recommendations "came before the court during the trial."

Here, there is a sufficient record for appeal although Tracy failed to provide an offer of proof regarding what Dr. Vereen's opinions on a custodial split would have been. In *Young*, this Court ruled that an issue regarding the relevance of excluded evidence was not preserved for appeal because of the absence of an offer of proof "or anything in the record showing" relevance. 136 Idaho at 120, 29 P.3d at 956. Here, there is something in the record that shows exactly what had been excluded and that the magistrate court understood what it was excluding. Thus, we find that there is a sufficient record to review the merits of this issue.

2. <u>Excluding expert opinion testimony regarding custodial split was within the magistrate court's discretion.</u>

Essentially, the issue on appeal is whether it was an abuse of discretion by the magistrate court to rule during trial that Tracy's counsel had failed to lay the required foundation to allow Dr. Vereen to present expert opinion testimony regarding the custodial arrangement between the parties. The magistrate court ruled that counsel had failed to provide appropriate foundation regarding any testimony related to the issue of the custodial split between the parents. We find that with the facts surrounding this particular decision involving the foundation for a custody evaluator's opinion testimony, the exclusion of testimony was within the magistrate court's discretion.

The trial court has discretion to decide the admissibility of expert testimony, and on appeal this decision will not be overturned absent an abuse of that discretion. *Jones v. Crawforth*, 147 Idaho 11, 21, 205 P.3d 660, 670 (2009). Expert witness testimony is admissible when the expert is qualified as an expert and the testimony will assist the trier of fact by aiding the understanding of evidence or determining a fact that is at issue. *Weeks*, 143 Idaho at 838, 152 P.3d at 1184. "The question under the evidence rule is simply whether the expert's knowledge will assist the trier of fact; not whether the information upon which the expert's opinion is based is commonly agreed upon." *State v. Merwin*, 131 Idaho 642, 646, 962 P.2d 1026, 1030 (1998).

15

In this case, the magistrate court explicitly stated that the testimony regarding the custodial split was "not that important" for its decision.[3] The magistrate court was able to create a custodial arrangement without Dr. Vereen's opinion testimony, a custodial arrangement that this Court has ruled was within its discretion. Where the magistrate court expressly states that expert opinion testimony on custodial splits will not assist the trier of fact in its understanding of the evidence, we will not overturn that decision unless the ruling is a manifest abuse of the magistrate court's discretion and a substantial right of the party is affected. I.R.E. 702; *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995). The magistrate court's decision was within the appropriate boundary of discretion afforded to a trial court ruling on an issue involving the introduction of evidence. The magistrate court recognized that I.R.E. 702 required that Dr. Vereen show he had suitable experience with this family and these circumstances to be able to share opinion testimony. As to Tracy's contentions that such foundation would be impossible, the magistrate court's ruling itself rules out any such impossibility. The magistrate court unambiguously stated that proper foundation would be present if Dr. Vereen could point to specific studies in the field that would guide his opinion on the limited issue of time with each parent. The magistrate court's ruling did not make such a foundation impossible, it just made a reasoned decision that the foundation was not present in this case because Dr. Vereen could not properly show that the opinion on the limited issue of percentage of parental time was supported by any "specialized knowledge" that would assist the magistrate court. Therefore, we find in this specific circumstance, that the magistrate court did not abuse its discretion by excluding expert opinion testimony regarding custodial splits.

## D. Neither party is entitled to an award of attorney fees on appeal.

Tracy argues that she is entitled to an award of attorney fees on appeal pursuant to I.C. § 32-704. Charles argues that he is entitled to an award pursuant to I.C. § 12-121.

As an argument on appeal for her entitlement to attorney fees, Tracy included an argument section that states "Tracy Clair has been required to appeal the magistrate court's decision and therefore request[s] attorney fees on appeal pursuant to I. C. 32-704." The mere citation to a code provision, without explaining how the cited code section provides for an award in the case or providing argument of how the section applies to the circumstances in the case, is

---

[3] A court is not bound by the recommendations of an expert regarding custody plans, and the recommendations can be rejected if the court ultimately orders a custody arrangement based on the best interests of the child. *Levin v. Levin*, 122 Idaho 583, 587, 836 P.2d 529, 533 (1992).

insufficient for an award of attorney fees on appeal. *Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010). Therefore we find that Tracy is not entitled to attorney fees on appeal.

An award of attorney fees on appeal pursuant to I.C. § 12-121 is permitted for a prevailing party when the Court determines that an appeal was brought, pursued, or defended in a manner that was frivolous, unreasonable, or without foundation. *Page v. Pasquali*, 150 Idaho 150, 153, 244 P.3d 1236, 1239 (2010). We find that Tracy did not pursue the appeal frivolously, and that Charles is not entitled to attorney fees on appeal.

## IV. CONCLUSION

We hold that the magistrate court did not abuse its discretion with its custody determination or its decision to order C.C. to reside primarily in Pocatello. We also hold that the magistrate court did not abuse its discretion when it excluded Dr. Vereen's expert opinion testimony regarding a specific percentage of time for physical custody among the parents. Finally, we find that neither party is entitled to attorney fees on appeal. Costs to Charles.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**

17