**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 47927**

ANGELA DENISE JOHNSON, )
)
   Petitioner-Appellant, )
)
v. )
)
PATRICK RICH MURPHY, )
)
   Respondent. )

Boise, June 2020 Term

Opinion filed: July 21, 2020

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County.  James D. Stow, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

K. Jill Bolton, Bolton Law, PLLC, Coeur d'Alene, for Appellant.

Michael B. Hague, Hague Law Offices, PLLC, Coeur d'Alene, for Respondent.

_____

MOELLER, Justice

This appeal concerns a child custody dispute. Angela Johnson and Patrick Murphy met online and began dating in 2014. When Angela discovered she was pregnant with their child, she left Boise and began living with Patrick in his home in Coeur d'Alene. After the birth of their son, the parties resided together for three and a half years. Angela, desiring to end what she considered an "unhealthy relationship," moved to Boise with their son in 2018. Shortly thereafter, Angela filed a petition in Ada County for paternity, custody, visitation, and support. Following venue being changed to Kootenai County and a trial, the magistrate court awarded the parties joint legal custody and physical custody of the child, with Patrick receiving primary physical custody unless Angela moved back to Coeur d'Alene at which point she and Patrick would share physical custody equally. In this expedited appeal, Angela contends that the magistrate court's decision was an abuse of discretion and requires reversal. For the reasons stated below, we affirm the magistrate court's child custody order.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Angela Johnson (then age 33) and Patrick Murphy (then age 49) started dating in January 2014 after meeting online. At the time, Angela was living in Boise and was the owner of a "high-end salon" in the downtown Boise area. Patrick was living in Coeur d'Alene and was a stone mason contractor. Angela had two children from prior relationships and Patrick had none. Early on in their relationship, the parties discussed Patrick's desire to become a father and Angela's willingness to have a child with him.

After dating for a few months, Angela became pregnant with their now four-year-old son, H.M., who is the subject of this appeal. In June of 2014, shortly after learning of her pregnancy, Angela moved to Coeur d'Alene to live with Patrick, who had promised to help provide for H.M. and take care of the family bills for the first two years of his life. H.M. was born in February 2015. Angela testified that shortly after she moved to Coeur d'Alene, her relationship with Patrick started to deteriorate and eventually turned "unhealthy." Angela testified that Patrick, who at 49 years of age had never been married, was "used to the way things [were]" and seemed "uncomfortable" with having another person living with him. According to Angela, Patrick would go weeks without talking to her, would get angry if she asked him for money, and would be verbally and mentally abusive to her.[1] Nevertheless, Angela remained in Coeur d'Alene with Patrick and they raised their child together for roughly three and a half years.

In November 2018, Angela moved back to Boise and took H.M. with her. Patrick testified that he had "[a]bsolutely no idea" she was moving to Boise before she left. Angela initially stayed with a friend until she was able to lease a house, which now serves as both her home and the location of her in-home assisted living care business for senior citizens. Despite the distance, Patrick attempted to maintain a relationship with H.M., participating in daily FaceTime calls and monthly visits. However, evidence in the record—including many text messages and emails—suggested that after the magistrate court entered a temporary order granting interim visitation rights, Patrick had difficulty seeing H.M. due to Angela's "lack of reasonable co-parenting."

On November 27, 2018, Angela filed a petition for paternity, custody, visitation, and support.[2] Angela requested that the court grant her sole physical custody of H.M. and that Patrick

---

[1] While Angela's briefs on appeal contain multiple references to "emotional abuse" and "verbal abuse," the trial transcript reveals that neither phrase was mentioned by any of the witnesses in their testimony. However, Angela's counsel argued generally in her summation at trial that Patrick was "abusive."

[2] Although the petition was initially filed in Ada County, venue was transferred to Kootenai County before trial.

have "[t]wo weekends per month and every other holiday . . . ." In his response, Patrick requested that the court order joint physical custody of H.M. but grant him primary physical custody.

The trial commenced on December 4, 2019, and lasted two days. Both parties presented witnesses and evidence. On January 13, 2020, the magistrate court orally pronounced its decision from the bench, which awarded Angela and Patrick joint legal custody and physical custody of H.M. Regarding physical custody, the court provided the parties with two options: (1) if Angela opted to return to Coeur d'Alene, she and Patrick would have a week on/week off custody schedule year round; and (2) if Angela elected to remain in Boise, Patrick would have primary physical custody of H.M., with Angela receiving visitation rights one weekend each month during the school year, every Thanksgiving Break and Spring Break, half of Christmas Break, and a two-week on/two-week off schedule during the Summer Break. The oral ruling was later reduced to a written judgment.

On March 4, 2020, Angela filed a motion for permissive appeal, which the magistrate court granted. Angela subsequently timely filed her notice of appeal with this Court.

## II.    STANDARD OF REVIEW

"Decisions as to the custody, care, and education of the child are committed to the sound discretion of the trial court and they will be upheld on appeal unless there is a clear showing of abuse of that discretion." *Martinez (Portillo) v. Carrasco (Mendoza)*, 162 Idaho 336, 345, 396 P.3d 1218, 1227 (2017) (internal citations omitted). This Court applies the familiar four-part test to determine whether a trial court has abused its discretion: whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 867, 421 P.3d 187, 198 (2018). "An abuse of discretion occurs when the evidence cannot support a magistrate's conclusion that the interests and welfare of the children would be best served by the magistrate court's order." *Kelly v. Kelly*, 165 Idaho 716, 730, 451 P.3d 429, 443 (2019).

## III.    ANALYSIS

### A. The magistrate court did not abuse its discretion in awarding primary physical custody of H.M. to Patrick unless Angela moved back to Coeur d'Alene.

Angela contends that the magistrate court abused its discretion in awarding Patrick primary physical custody of H.M. unless she moved back to Coeur d'Alene because (1) the evidence does not support the court's finding that such an arrangement is in H.M.'s best interests, (2) the court

3

failed to analyze each of the relevant statutory factors and overemphasized some of the factors, and (3) the court erroneously placed the burden on Angela to prove that her move to Boise was necessary. Patrick contends that the magistrate court's decision is sound, well-reasoned, and in accord with established legal principles. We hold that the magistrate court did not abuse its discretion in awarding Patrick primary physical custody of H.M. should Angela choose to remain in Boise.

"The welfare and best interest of the child is of paramount importance when awarding custody." *Martinez (Portillo)*, 162 Idaho at 345, 396 P.3d at 1227. "Idaho Code section 32-717 provides a framework for the trial court in determining the best interests of the children in making a custody decision." *Searle v. Searle*, 162 Idaho 839, 844, 405 P.3d 1180, 1185 (2017) (quoting *Doe v. Doe*, 161 Idaho 67, 73, 383 P.3d 1237, 1243 (2016)). Section 32-717 sets forth a list of factors to consider when evaluating the bests interests of the child. Those factors are:

(a) The wishes of the child's parent or parents as to his or her custody;

(b) The wishes of the child as to his or her custodian;

(c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

(d) The child's adjustment to his or her home, school, and community;

(e) The character and circumstances of all individuals involved;

(f) The need to promote continuity and stability in the life of the child; and

(g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32-717(1). "The factors listed in Idaho Code section 32-717 are neither mandatory nor exhaustive." *Reed v. Reed*, 160 Idaho 772, 777, 379 P.3d 1042, 1047 (2016). Importantly, the magistrate court must consider "all relevant factors," regardless of whether they are enumerated above. *Id.* Moreover, a court may abuse its discretion where it "overemphasizes one factor." *Searle*, 162 Idaho at 844, 405 P.3d at 1185 (quoting *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981)).

Angela argues that the magistrate court's decision on physical custody was not supported by the evidence elicited at trial and that the court "failed to conduct the required analysis of the [section] 32-717 factors and any other relevant factors in light of the evidence actually elicited at trial." Patrick contends that the magistrate court properly considered all relevant factors, including those set forth in section 32-717. After reviewing the magistrate court's findings of fact and

conclusions of law, we conclude that the magistrate court considered and carefully weighed all of the relevant factors, which included detailed findings on the parent's wishes, the interaction and interrelationship of H.M. with his parents, H.M.'s adjustment to his home, school, and community, the character and circumstances of H.M. and his parents, and the need to promote the continuity and stability of H.M., all of which were supported by substantial evidence.

Approximately five weeks after presiding over the trial of this matter, and evaluating first-hand the testimony and evidence presented at trial, the magistrate court set forth its "findings of fact and conclusions of law." The court began by recognizing the discretionary nature of its decision as well as "the preference under Idaho law for joint legal and joint physical custody between parents." The magistrate court next considered "the factors of Idaho Code [section] 32-717, and all other relevant factors." Beginning with the factors listed in section 32-717, the court considered the "wishes of the child's parents as to his . . . custody," I.C. § 32-717(1)(a), finding that each parent wished to be the "primary custodial parent." The court did not consider the "wishes of the child," I.C. § 32-717(1)(b), because it found that at only four-years-old "the child is too young for his specific wishes to be known." Angela argues that the magistrate court erred in this respect because the court could have determined from the evidence that H.M. "preferred living in the primary care of his mother" since he "had only ever known the primary care of his mother, interrupted by temporary visits with his father." This argument unfairly skews the evidence by focusing on the one-year period where Patrick was separated from his son—a situation created by Angela's unilateral move to Boise. The evidence at trial suggested that Patrick was involved in his son's life and upbringing to a much higher degree before Angela moved away.

The magistrate court also addressed the "interaction and interrelationship of the child with his . . . parents." I.C. § 32-717(1)(c). The court acknowledged that Angela was the "primary caretaker for the child since birth," which included "medical appointments, diaper changes, feedings, [and] things of that nature," but that Patrick "was involved with the child on a virtually daily basis." Patrick testified that he stayed home with H.M. every day for the first year of his life. Again, Angela argues that the magistrate court should have instead focused on the interaction between H.M. and Patrick during the time H.M. was living in Boise because Patrick had longer blocks of time alone with H.M. Although the court noted that Patrick "has now been an on-duty parent for bigger blocks of time" since Angela moved to Boise, it focused primarily on Patrick and H.M.'s relationship when they were living together as a family in Coeur d'Alene. While probing

5

further into their relationship after Angela moved to Boise may have provided the court with some additional insight into how Patrick would be as a primary caregiver, we cannot say it was an abuse of discretion for the magistrate court to focus on the time before Angela took H.M. to Boise as being more probative of the true nature of Patrick's relationship with H.M. Angela's unilateral move to Boise clearly changed the family dynamic in ways beyond Patrick's control, and it was not unreasonable for the court to take that into consideration.

The magistrate court next addressed the "child's adjustment to his . . . home, school, and community." I.C. § 32-717(1)(d). The court found that at the time Angela and H.M. moved to Boise, H.M. had no connections to Boise and had only known the Coeur d'Alene area. However, the court also found that the child appeared to be well-adjusted to his life in Boise and that he "enjoys his school in the Boise area and has made some friends there." Thus, Angela's argument that the magistrate court "didn't make any findings about the . . . friends he had made [in Boise], nor how much he loved his Montessori pre-school there," lacks merit. The court ultimately found that the child had "numerous" friends and family in Coeur d'Alene and that "[t]hese are positives that are not yet in place to the same degree in the Boise area, according to the evidence and my findings of the evidence."

The magistrate court addressed the "character and circumstances of all individuals involved." I.C. § 32-717(1)(e). The court found that Angela was a fit parent and that her home in Boise was appropriate for H.M. Likewise, the court found that Patrick was a fit parent and that his home, too, was appropriate for H.M. In her briefing on appeal, Angela now maintains that the magistrate court "largely glossed over" Patrick's marijuana use. However, the record shows that the court acknowledged that Patrick "regularly used marijuana," but found that there had been "no showing that [Patrick] has been under the influence of marijuana while being the on-duty parent." Witnesses confirmed at trial that Patrick has never been "high" around H.M, and Patrick testified that he has never smoked marijuana while in charge of H.M. Importantly, during Angela's direct examination on rebuttal, the following exchange took place with her attorney:

> Q [by Angela's attorney]: Okay. Do you have any concerns about [Patrick's] ability to care for [H.M.] --
>
> A [Angela]: Not in the --
>
> Q. -- with regard to [marijuana] usage?

6

A. Well, I just -- a little bit, yes, because I feel like it might affect his energy level, just not as clear thinking, but not -- not as much as -- I have some concerns but not giant concerns.

Q. Right. And you've, therefore, not hesitated when it was a possibility to let -- to have [H.M.] visit with his dad and spend substantial time with him, right?

A. I think it's important that they spend time together.

Q. Right. The -- several of the witnesses from the -- that Patrick had were discussing how wonderful a father figure and father role model, if you will, Patrick is for [H.M.]. You don't entirely disagree with that, do you?

A. No, he is in many ways.

This testimony is inconsistent with the more dire view of Patrick's marijuana use that Angela has now taken on appeal.[3] While we do not condone a parent's use of illegal substances, the magistrate court did not find this factor alone to be disqualifying because there was no evidence that Patrick had ever used or was under the influence of marijuana in the presence of H.M. Therefore, notwithstanding any concerns we may have, we cannot conclude that the magistrate court abused its discretion in this regard.

The magistrate court next considered the "need to promote continuity and stability in the life of the child." I.C. § 32-717(1)(f). When weighing this factor, the court compared the stability in maintaining the same primary caregiver with the stability in living in the same residence. Regarding stability in the primary caregiver, the court again acknowledged that Angela has been H.M.'s primary caregiver since birth, which it considered to be a significant factor. Regarding stability in residence, the court acknowledged that Angela's "stability of residence is less than [Patrick]'s" since she leases her home and Patrick owns his home, which is the home H.M. grew up in for the first three and a half years of his life up until Angela moved him to Boise. The court also noted that both parties originally agreed to raise H.M. in Coeur d'Alene. The court ultimately determined that the "history, contacts, and stability all lean in favor of the child's best interest being found here by residing in the Coeur d'Alene area."

Angela argues that the magistrate court should have found that stability and continuity with the same primary caregiver outweighed stability and continuity of a familiar residence and a familiar community, like the Court of Appeals found in *Markwood v. Markwood*, 152 Idaho 756,

---

[3] Angela's counsel obviously recognized the impact of such conciliatory testimony and attempted to downplay it in her closing argument at trial by explaining: "Now, Ms. Johnson is very, very kind. As the Court can tell, she's not trying to lay blame on Mr. Murphy. She's really tried to describe him in a way that is very kind, but she had to make choices when she found herself in that environment with Mr. Murphy."

7

762, 274 P.3d 1271, 1277 (Ct. App. 2012) (holding that "the stability factor tilted in factor of relocation with [mother]" because, although "primary residence with [father] would offer the stability and continuity of a familiar residence in a familiar community, . . . continued primary custody with [mother] provided the stability of continuity with the same primary caregiver."). The court's finding in *Markwood* that the stability factor weighed in favor of relocation with mother since she was the primary caregiver was just one factor it considered among all the others. Thus, even if we were to hold that the magistrate court erred in finding that this factor favored primary physical custody with Patrick in Coeur d'Alene, the court's decision is still supported by all the other relevant factors it considered. Moreover, it would have been an abuse of the magistrate court's discretion to award Angela primary physical custody based on this factor alone, as she apparently urges us to do. *See Searle*, 162 Idaho at 844, 405 P.3d at 1185 (explaining that a court may abuse its discretion where it "overemphasizes one factor.").

Angela also argues that the magistrate court should have considered "the evidence that [Patrick] was only capable of[] earning $27,000 per year." However, the magistrate court recognized that, although Patrick acknowledged in his affidavit that he only made around $27,000 a year as a stone mason, "he could work more if he chooses to." This is supported by Patrick's testimony at trial wherein he stated that he could make additional income if he wanted to by doing "[a]dditional work." Angela's counsel at trial even stated that the "27,000 is very much an underrepresentation of his income, your honor," and that "his actual income as he reported it on his taxes is quite significantly more." Thus, the court did consider Patrick's reported income in its decision. Had this been a child support issue, Patrick's alleged under-employment would have been an important factor; however, for custody purposes, one parent's decision not to earn as much as they are capable of earning should not be used against them. If we were to adopt such a view, it would have tremendous consequences for parents who elect to stay at home with their child.

The magistrate court did not address the last factor listed in section 32-717, which is "[d]omestic violence as defined in section 39-6303, Idaho Code," I.C. § 32-717(1)(e), because it determined that domestic violence was "not a direct issue for the [c]ourt." The magistrate court did not err in this respect because neither party alleged that there had been any "domestic violence," at least as it is defined within the relevant statute. Specifically, section 39-6303(1) defines "domestic violence" in part as the "physical injury, sexual abuse or forced imprisonment or threat thereof of a family or household member." The record is clear that neither party alleged

8

any physical injury, sexual abuse, or forcible imprisonment, nor did either allege that the other threatened to do any of those things. Rather, Angela alleged that there was a lot of "emotional and financial abuse" and "conflict" in their relationship, which she argues the court should have considered. The court did consider the conflicts between Angela and Patrick, but ultimately found that there was "insufficient evidence" that their conflicts "affect[ed] the fitness of either to effectively parent their child."

In addition to the factors listed in section 32-717, the magistrate court addressed other relevant factors. For example, the court discussed where H.M.'s primary residence should be: Coeur d'Alene or Boise. H.M. had lived in the same home in Coeur d'Alene for three and a half years since his birth in February 2015. However, in November 2018, Angela moved to Boise with H.M. after she separated from Patrick. Accordingly, the court addressed Angela's unilateral move to Boise and the effect it had on H.M. and his relationship with his father.

"A parent's move is only one factor to be considered when awarding custody." *Bartosz v. Jones*, 146 Idaho 449, 457, 197 P.3d 310, 318 (2008). Therefore, a magistrate court must not focus on the move alone, but should "consider all factors relevant to the child's best interest when making a custody determination." *Id.* Nevertheless, a court should also consider the "residual effects of a move—distance from the [child's] old friends and family, changing schools, and the reduced amount of time they will be able to spend with their [other parent]." *Suter v. Biggers*, 157 Idaho 542, 550, 337 P.3d 1271, 1279 (2014).

In *Clair v. Clair*, the magistrate court addressed a parent's unilateral move to another state. 153 Idaho 278, 285, 281 P.3d 115, 122 (2012). In that case, the mother moved the parties' child from Pocatello to Nevada after they had separated. *Id.* at 281, 281 P.3d at 118. After reviewing all of the evidence, the court found that custody in Pocatello would promote more continuity and stability in the child's life because of familiarity with the area—a "stable known environment." *Id.* at 284, 281 P.3d at 121. Accordingly, the court determined that it was in the child's best interests to reside primarily in Pocatello and structured the custody arrangement around that finding. *Id.* at 283, 281 P.3d at 120.

In upholding the magistrate court's custody determination, this Court explained that "the magistrate court correctly based its decision for custody on the child's best interests." *Id.* at 286, 281 P.3d at 123. The Court explained that it is presumed to not be in the child's best interests "to permit one parent to unilaterally remove a child from the community where the parents and child

9

resided when such move prevents the other parent from having frequent and continuing contact with the child." *Id.* (quoting *Navarro v. Yonkers*, 144 Idaho 882, 889, 173 P.3d 1141, 1148 (2007)) (Eismann, C.J., specially concurring). Accordingly, because the mother "did not prove by a preponderance of the evidence that it was in [the child's] best interest to move to Nevada with her, the magistrate court created a custody arrangement with alternative plans depending on [the mother's] decision whether she would relocate to the Pocatello area," *id.* at 282, 281 P.3d at 119, which this Court held was not an abuse its discretion, *id.* at 286, 281 P.3d at 123; *see also State v. Hart*, 142 Idaho 721, 725, 132 P.3d 1249, 1253 (2006) ("Uprooting a child every two weeks to travel and live in alternating locations with alternating people raises serious concerns as to the welfare of the child.").[4]

Similarly, the magistrate court in this case found that "it is in the best interest of the child to reside primarily in the Coeur d'Alene area while having frequent and continuing contact with both parents," and structured the custody arrangement around that finding. The court's decision was based on several factual findings from the record. For example, the court found that there was "[i]nsufficient proof that [Angela] could not find reasonable work in th[e Coeur d'Alene] area or that there was somewhat . . . a necessity or a quasi necessity for her to move." Angela testified that she had to move to Boise because she could not find a suitable place in Coeur d'Alene to run her senior in-home living care. The magistrate court was not persuaded. The court found that Angela was capable of starting her senior in-home living care in Coeur d'Alene, and that she could have "worked in the hair care industry while . . . pursuing the in-home business." Although it is not clear from the record how the court made this determination, what is clear is that Angela moved to Boise prior to finding a suitable home in the Boise area to start her senior in-home living business. Angela stated in her briefing on appeal that she lived with a friend in Boise temporarily "to help her establish her business and find a suitable home for providing in home care to seniors."

---

[4] Our decision in *Clair* also belies Angela's argument that "the decision to force Mom to move to Coeur d'Alene was just the type of forced move that this Court recognized as violative in *Allbright*." We clarified in *Clair* that, although section 32-717(1) " 'does not authorize a court to decide the geographic area in which the parent or parents of the child shall live,' it does not supersede the magistrate court's discretion in the best interest of the child to 'determine with which parent the child will reside.' " 153 Idaho at 285, 281 P.3d at 122 (quoting *Allbright v. Allbright*, 147 Idaho 752, 754–55, 215 P.3d 472, 474–75 (2009)). We explained that "[t]he magistrate court did not order [the mother] to return to the Pocatello area or mandate that she live there—it found that it was in the best interests of the child to reside in Pocatello and structured the custody arrangement around that finding." *Id.* That is precisely what the magistrate court in this case did.

10

Accordingly, Angela moved to Boise without knowing whether she would be able to find a suitable home to start her new career.

The magistrate court also found that "[t]he time spent in the car [to and from Boise] is unreasonable." The court acknowledged that, although the parties had discussed the possibility of air travel, "there were few details as to the precise cost [and] the actual availability." When asked during the trial about the specifics of such flights, Angela was unable to provide the court with any details. For example, Angela could not remember which airlines provided the flight, did not know the precise cost of the flight, and could not tell the court whether it would be more "economically feasible" to transport H.M. via airplane. The court concluded that promoting "frequent and continuing contact between the child and both of his parents" would be extremely difficult when the parents live approximately 370 miles apart. The magistrate court's decision was supported by substantial and competence evidence.

Finally, the magistrate court found that Angela's move negatively "impacted [Patrick]'s ability to exercise his custodial rights." Specifically, the court found that prior to the temporary custody order being put in place, Angela "sort of" made arrangements with Patrick for blocks of time for the child to spend with him. Yet, once the temporary custody order was put in place, the court found that Angela "was not completely reasonable with coordinating [Patrick]'s parenting time in the Boise area" and that her actions during this time showed a "lack of reasonable coparenting." Angela does not deny that she and Patrick had at least one disagreement regarding child custody exchanges, but minimizes it as just "one incident." Nevertheless, the magistrate court found that this incident was indicative of her unwillingness to fairly co-parent and follow a court order:

> [Angela's] refusal to turn the child over one Friday morning until a later hour was not reasonable by my view of the evidence.
>
> It, first of all, was not consistent with the language of the temporary order; that is, if Dad could be down there earlier, the intent was to have him able to exercise a greater amount of time. It seems to me that in doing that, effectively that amounts to poor coparenting, that Mom failed to recognize that Dad had limited time based on that schedule, that he had traveled a great distance to exercise that time, and even recognizing really it was her decision to move the child considerable distance away that created the situation.

Based on these findings, as well as several others, the magistrate court ultimately concluded that "it was not in the child's best interest to be removed from the only home he had known and from the daily interactions with both parents," and that the "history, contacts, and stability all lean in

11

favor of the child's best interest being found here by residing in the Coeur d'Alene area." We cannot say this conclusion was an abuse of the magistrate court's discretion.

Angela argues that in reaching this conclusion, the magistrate court placed too much emphasis on her move from Coeur d'Alene to Boise and "incorrectly treated the case as if it were a 'move away case' and as if Angela moved in violation of a court order by placing a burden upon her to demonstrate that it was necessary for her to move." According to Angela, her move should have been viewed by the magistrate court "as just one factor in the best interest of the child analysis." Patrick argues that the magistrate court "clearly treated the move to Boise as just one factor [it] considered as part of the best interests analysis." Angela's argument lacks merit.

First, the magistrate court considered Angela's move to Boise as just one factor among several other factors it considered as shown above. Second, the magistrate court specifically recognized that this was not a "move-away case." The court explained that unlike the case at bar, a "move-away case" generally involves the modification of an existing child custody order when one parent wishes to move far enough that a traditional custody schedule is unworkable. However, the court admittedly relied, in part, on such cases because it found them "to be instructive in considering what is in a child['s] best interest, which is really the focus in those move-away cases, and . . . in any child custody matter." Accordingly, Angela's arguments that the magistrate court incorrectly placed too much emphasis on this factor and erroneously treated this case as a "move away case" are without merit.

Angela also argues that it cannot possibly be in H.M.'s best interests to be "uprooted from his established home with and primary care of his mother in Ada [C]ounty and moved to Coeur d'Alene." Yet, that is exactly what Angela did when she left Northern Idaho, moved 370 miles away, and uprooted H.M. from his established home in Coeur d'Alene. Angela further asserts that the magistrate court's decision "wholly ignores" the "disruption this move will cause to the child's stable and continuous home life with his mother and his mother's ability to provide the needed financial support for herself and the child." Yet, Angela fails to distinguish the disruption potentially caused by the court's order from the disruption actually caused by her decision to move H.M. to Boise, including the disruption of his stable and continuous life in Coeur d'Alene and the relationship he had with his father. Angela asks this Court to ignore any harm she may have caused by her move to Boise and instead focus entirely on the harm caused by the magistrate court's order

which may result from her moving back with the child. That, however, is not the proper focus of our inquiry.

In sum, we hold that the magistrate court did not abuse its discretion in awarding Patrick primary physical custody of H.M. unless Angela moved back to Coeur d'Alene. The magistrate court weighed all relevant factors, did not overemphasize any individual factors, and ultimately determined what was in the best interests of the child. It is not our role to reweigh the evidence and second-guess the magistrate court's findings when they are clearly supported by substantial and competent evidence. Therefore, we affirm the magistrate court's child custody order.

### B. Neither party is entitled to attorney fees on appeal.

Both parties request attorney fees on appeal. However, neither party presented any argument in compliance with Idaho Appellate Rule 35. Idaho Appellate Rule 35(b)(6) provides that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." While both parties listed attorney fees as an issue to be decided on appeal,[5] neither party provided any argument as to why they should be awarded attorney fees. Thus, absent any legal analysis or argument, "the mere reference to [a] request for attorney fees is not adequate." *Goldman v. Graham*, 139 Idaho 945, 948, 88 P.3d 764, 767 (2004). Accordingly, we decline to award either party attorney fees on appeal.

## IV.    CONCLUSION

We affirm the magistrate court's child custody order. Patrick, as the prevailing party, is awarded costs.

Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER **CONCUR.**

---

[5] In her reply brief, Angela addresses why Patrick should not be awarded attorney fees and includes a sentence addressing why she instead should be awarded attorney fees. However, "[i]n order to be considered by this Court, the appellant is required to identify legal issues and provide authorities supporting the arguments in the opening brief. I.A.R. 35. A reviewing court looks to the initial brief on appeal for the issues presented on appeal." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). Because Angela failed to provide any argument in her opening brief, she has not properly raised attorney fees as an issue on appeal.