# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49320

| | | |
|---|---|---|
| ERIN SUE CARVER, <br> fka ERIN SUE HORNISH, | ) <br> ) <br> ) | |
|   Petitioner-Appellant, | ) <br> ) | Boise, February 2022 Term |
| v. | ) <br> ) | Opinion Filed: October 18, 2022 |
| WILLIAM EUGENE HORNISH, JR. | ) <br> ) | Melanie Gagnepain, Clerk |
|   Respondent. | ) <br> ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Michael Dean, Magistrate Judge.

The decision of the magistrate court is <u>affirmed</u>.

Breen Ball & Marelius, PLLC, Boise, for Appellant. M. Sean Breen argued.

Goss Gustavel Goss, PLLC, Boise, for Respondent. Geoffrey E. Goss argued.

_____

BRODY, Justice.

This case addresses the subject matter jurisdiction of the magistrate court in a divorce action when a minor is emancipated as a result of her marriage. Erin Carver alleges that her ex-husband, William Hornish, consented to the marriage of their 16-year-old daughter ("Daughter") in order to legally emancipate her and circumvent custody provisions in the parties' divorce decree. Carver learned of the alleged scheme before it was accomplished and filed a motion to prevent Hornish from exercising legal authority to consent to Daughter's marriage. However, the magistrate court did not rule on the motion before Daughter was married. Carver argues on appeal that the motion should have been granted retroactively, effective to a date before the marriage or, in the alternative, the statute allowing a minor to marry with the consent of only one parent should be declared unconstitutional. For the reasons below, we reject both arguments and affirm the magistrate court's decision to dismiss Carver's verified petition to modify the judgment and decree

of divorce and the counterpetition filed by Hornish.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Carver and Hornish were divorced in 2012 and the parties were awarded joint custody of their three minor children. In July 2021, Carver filed a petition in the magistrate court to modify the divorce decree (which had been previously modified in 2014) to obtain primary physical custody of 16-year-old Daughter, their only child who still remained a minor. Carver argued the modification was necessary because Hornish planned to move to Florida for his work.

Hornish filed an answer and counterpetition two days later, asking that he be awarded primary custody of Daughter. According to the counterpetition, Daughter wanted to move with Hornish to Florida. A week later, Hornish filed a motion for temporary orders seeking the immediate authority to move with Daughter and enroll her in high school in Florida.

Five days after Hornish filed his motion for temporary orders (and before a ruling by the magistrate court), Carver filed a petition under Idaho Code section 32-11-308 for expedited enforcement of the alternating-week custody schedule set out by the 2012 divorce decree. Hornish was supposed to have transferred Daughter to Carver the day before but had not because he had left for Florida, taking Daughter with him. The magistrate court held a hearing on the petition for expedited enforcement. At the hearing, Hornish's counsel acknowledged that Hornish had left Idaho with Daughter but assured the magistrate court that Daughter would be flown back to Idaho within a few days. Daughter returned to Idaho four days later.

Carver then filed a cross-motion for temporary orders seeking primary custody of Daughter during the pendency of her petition to modify the divorce decree. The magistrate court held a hearing to consider Hornish's motion for temporary orders, Carver's cross-motion for temporary orders, and two motions for contempt stemming from Hornish's having taken Daughter out of Idaho. The magistrate court denied Hornish's motion for temporary orders and granted Carver's cross-motion, reasoning that Daughter should stay in Idaho until more information about her best interests could be developed at trial:

> [T]he request to move [Daughter] to Florida is a rather drastic request in my mind. It removes her out of the state where she has been residing for a lengthy period of time. It moves her to a place where maybe there is some support, but the Court's not aware of the extent of that support there. That's something that I think the Court would need to hear more about and I think during a full trial rather than in temporary motions.

The magistrate court then scheduled a two-day trial for late March 2022.

On October 27, 2021, Carver filed a new motion for temporary orders under Idaho Rule of Family Law Procedure 504. The next day, she filed another motion, largely identical in substance, but seeking immediate ex parte relief under I.R.F.L.P. 505. In these motions, Carver alleged Hornish was trying to arrange a sham marriage which would legally emancipate Daughter and strip the magistrate court of jurisdiction over her custody. In the verified I.R.F.L.P. 505 motion, Carver stated that she received a call from a woman in Florida whose 18-year-old son Patrick was an acquaintance of Daughter. According to the woman, Daughter had offered to do Patrick's high school homework if he would marry her. The woman said she spoke with Hornish, and he approved of this plan. Further, the woman stated that when she told Hornish that Patrick would not participate, Hornish replied that he would "get Nick to do it," apparently referring to another boy or young man in Florida.

Along with the October 27 motion for temporary orders (the I.R.F.L.P 504 motion), Carver had also filed a motion to shorten time and have a hearing on the matter on November 9, 2021. The magistrate court granted this motion on October 29, 2021, but it did not take any action regarding the October 28 motion for ex parte temporary orders. However, the magistrate court granted Carver's ex parte motion on November 5, 2021, holding that "[b]oth the child and Petitioner would suffer irreparable harm" if the alleged sham marriage were to occur.

On November 8, the parties submitted a flurry of filings, not all of which are in the record on appeal. These appear to have begun with a motion by Hornish (not in the record) to dismiss Carver's July 13 petition on the basis that Daughter had been married in Canyon County on November 1, 2021, to a person ("Husband"), who was neither Patrick nor Nick. Daughter was just under seventeen years old at the time of the marriage. In response to Hornish's motion to dismiss, Carver apparently filed a motion (also not in the record) requesting that the magistrate court reissue the November 5 order nunc pro tunc to October 28, 2021, and a separate motion to annul Daughter's marriage pursuant to Idaho Code section 32-501. Hornish then filed an objection to the motion to annul.

The magistrate court held a hearing the next day (November 9, 2021). The court explained that it had not seen the ex parte motion until November 5, due to a delay in the electronic filing system or an oversight on its own part. Further, although it had granted the ex parte motion immediately upon seeing it, the magistrate court expressed doubt whether it had the authority to reissue the order nunc pro tunc to an earlier date. The magistrate court then ordered the parties to

3

submit briefs regarding its nunc pro tunc authority and scheduled another hearing.

The magistrate court orally ruled on Hornish's motion to dismiss at a hearing on November 19. The magistrate court held it did not have the authority to reissue the November 5 order nunc pro tunc because it had not seen the motion before that date. Thus, the magistrate court reasoned that Daughter's marriage on November 1 was valid, that it no longer had jurisdiction over her custody, and that it was required to grant Hornish's motion to dismiss.

The magistrate court entered judgment in favor of Hornish on November 23, 2021. The same day, it issued an order granting an immediate permissive appeal to this Court under Idaho Appellate Rule 12.1. Carver timely appealed. After oral arguments before this Court, the parties were ordered to submit supplemental briefs.

## II. STANDARD OF REVIEW

Unless a factual challenge to jurisdiction has been raised, the decision to dismiss an action for lack of jurisdiction is reviewed applying "the same standard of review we apply to a motion for summary judgment. After viewing all facts and inferences from the record in favor of the non-moving party, the Court will ask whether a claim for relief has been stated." *Emps. Res. Mgmt. Co. v. Ronk*, 162 Idaho 774, 777, 405 P.3d 33, 36 (2017) (quoting *Joki v. State*, 162 Idaho 5, 8, 394 P.3d 48, 51 (2017)).

## III. ANALYSIS

**A. We affirm the dismissal of Carver's petition because the magistrate court lacked subject matter jurisdiction over Daughter's custody and jurisdiction would not have been restored by granting Carver's motion for nunc pro tunc relief.**

The magistrate court held that it was required to dismiss Carver's petition to modify the custody provisions of the parties' divorce decree and the counterpetition filed by Hornish because Daughter was emancipated by her marriage on November 1, 2021, and it no longer had jurisdiction over her custody. It concluded that Hornish had authority under Idaho Code section 32-202 to consent unilaterally to Daughter's marriage and—although it would have granted Carver's October 29 ex parte motion to suspend Hornish's authority to consent if it had seen the motion in time—the magistrate court held that it could not retroactively grant Carver's requested relief. Specifically, the magistrate court held it was not empowered under the doctrine of nunc pro tunc to make the motion effective on any date before November 5 (when it first became aware of the motion), because "[t]he function of a nunc pro tunc entry is to make a record of something that was done and not recorded. It cannot be used to show action which was not, in fact, taken."

4

Before addressing Carver's nunc pro tunc argument, it is important to take up the magistrate court's subject matter jurisdiction. In a divorce action, the magistrate court only has subject matter jurisdiction to determine the custody of "*children* of the marriage[.]" I.C. § 32-717 (emphasis added). When a child reaches the age of majority, *Arkoosh v. Arkoosh*, 66 Idaho 607, 611, 164 P.2d 590, 591 (1945), is emancipated by marriage, I.C. § 32-202, or is emancipated by legal proceeding, *Embree v. Embree*, 85 Idaho 443, 449–50, 380 P.2d 216, 220 (1963), he or she is no longer a "chil[d] of the marriage" that the magistrate court can direct custody of in a divorce action. *See* I.C. §§ 32-717; 32-101; *see also* I.C. § 32-1007 ("The father and mother of a legitimate *unmarried minor child* are equally entitled to its custody[.]") (emphasis added). Here, Daughter was emancipated by her marriage on November 1, 2021. Because of this, she is no longer an "unmarried minor child" subject to the magistrate court's jurisdiction in the divorce action.

Carver's primary argument on appeal concerns the magistrate court's interpretation of the doctrine of nunc pro tunc. "Nunc pro tunc" is Latin meaning "now for then." *Nunc pro tunc*, Black's Law Dictionary (11th ed. 2019). An order entered nunc pro tunc has legal effect retroactive to a specified date. *Id.* Carver asserts that the magistrate court understood its nunc pro tunc authority too narrowly. While the magistrate court concluded that nunc pro tunc relief is limited to technical corrections in the record, Carver argues the doctrine reaches further. Citing *Mitchell v. Overman*, 103 U.S. 62, 64–65 (1880), she maintains that omitted judicial action may be retroactively supplied if the fault for failing to timely act lies with the court and the interests of justice require a retroactive remedy.

The premise underlying Carver's nunc pro tunc argument is that a "retroactive order would strip [Hornish] of his legal authority to consent and thus, as a matter of law, the marriage would [be] declared null and void." But that is not so. Although issuing Carver's ex parte order nunc pro tunc would have retroactively nullified Hornish's *consent* to the marriage, it would not, by operation of law, have nullified the *marriage*.

Carver's assertion to the contrary fails to account for the difference between void and voidable marriages. A void marriage is one that is incapable of being valid. *See* 55 C.J.S. *Marriage* § 51. Generally, a marriage is not void unless a "statute clearly indicates a legislative intention to nullify such marriages" *ab initio* and in all instances. *Id.* By contrast, a marriage that is capable of being ratified is merely voidable. *Id.* Importantly, while a void marriage cannot be given any legal

5

effect, "a voidable marriage is valid unless and until it is adjudicated a nullity, and thus remains valid for all civil purposes until annulled . . . ." *Id.* (footnote omitted).

The only marriages clearly declared void by the Idaho legislature are incestuous and polygamous marriages. *See* I.C. §§ 32-205, 32-207. Furthermore, the marriage of a 16- or 17-year-old without parental consent can be ratified. *See* I.C. § 32-501 (providing that such a marriage cannot be annulled if "after attaining the age of consent, [the party on whose behalf an annulment is sought] for any time freely cohabits with the other"). Consistent with this, the U.S. District Court for the District of Idaho has held that the marriage of a minor without valid parental consent is voidable, not void. *See Mays v. Folsom*, 143 F. Supp. 784, 786 (D. Idaho 1956). We hold the same.

Accordingly, even if the magistrate court were to have retroactively invalidated Hornish's consent by granting Carver's motion nunc pro tunc, Daughter's marriage would, at best, have been rendered voidable. Because a voidable marriage remains valid until annulled—and Daughter's marriage was not annulled—the magistrate court lacked jurisdiction over Daughter's custody regardless of its disposition of Carver's motion for nunc pro tunc relief. Therefore, we affirm the magistrate court's dismissal of Carver's petition for lack of jurisdiction, and we need not address whether the magistrate court's nunc pro tunc ruling was correct.

### B. We decline to rule on the constitutionality of Idaho Code section 32-202.

As an alternative to her nunc pro tunc argument, Carver raises a constitutional challenge to Idaho Code section 32-202, which governs the issuance of marriage licenses. That statute provides that a minor may be issued a marriage license, provided that the age difference between the prospective spouses is no greater than three years, both are at least 16 years old, and written consent is provided "by the father, mother, or guardian" of any minor seeking a license. I.C. § 32-202.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." This guarantee "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg,* 521 U.S. 702, 719 (1997)). The right of parents to make decisions regarding the care, custody, and control of their children is one such fundamental right. *Id.*; *Leavitt v. Leavitt*, 142 Idaho 664, 670, 132 P.3d 421, 427 (2006). Carver urges this Court to declare Idaho Code section 32-202 unconstitutional because the statute permitted a marriage license to issue to Daughter with

6

only Hornish's parental consent, thereby allowing her own parental rights to be effectively terminated without due process.

Carver's argument raises important constitutional questions about the provision of section 32-202 that allows a minor to marry with only one parent's consent—a part of the statute we note was first enacted a century ago and has remained unchanged since. *See* 1921 Idaho Sess. Laws 492. The marriage of a 16- or 17-year-old implicates numerous overlapping and potentially conflicting interests—especially when two fit parents share custody of the minor pursuant to a divorce decree. These include the fundamental rights of each parent, the interest of the minor in her self-determination, the interests of the judiciary in seeing that its orders are not thwarted, and the interest of the state as *parens patriae* in assuring the welfare of children within its jurisdiction.

Most states that allow minors to marry have enacted statutes that seek to balance at least some of these interests. For example, Utah law provides that "if the parents of the minor are divorced and have been awarded joint custody . . . , consent shall be given by the parent having physical custody of the minor the majority of the time . . ." Utah Code § 30-1-9. Arkansas law provides that the consent of both parents is required, unless the parents are divorced and one has been awarded sole legal custody. *See* Ark. Code § 9-11-102. New Mexico law provides that the consent of both parents is required, unless one parent consents and a district court has determined that good cause for issuing a license has been shown. N.M. Stat. § 40-1-6. North Carolina law provides that a minor may be issued a license without either parent's consent, if a court concludes that the best interests of minor would be served by the marriage, after a hearing at which the minor is represented by a guardian ad litem and the parents' opinion about the minor's best interests are considered. N.C. Gen. Stat. § 51-2.1. Other approaches abound. However, for the reasons below, we decline to consider whether Idaho Code section 32-202 is unconstitutional for its failure to include any provision like these.

We require that issues be raised below to be heard on appeal. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Nelson v. Nelson*, 144 Idaho 710, 714, 170 P.3d 375, 379 (2007) ("We have long held that '[a]ppellate court review is limited to the evidence, theories and arguments that were presented below.' ")). The rule fosters the full testing of issues by the adversarial process, ensures that factual records are fully developed, aids the Court in the correct resolution of cases through "the refinement of . . . arguments on appeal and the wisdom of the trial court in deciding the matter in the first instance," and serves interests of efficiency and

finality. *See State v. Howard*, 169 Idaho 379, 496 P.3d 865, 871 (2021). Here, because Carver failed to raise the constitutionality of section 32-202 below, we decline to address it now.

We acknowledge this rule is not absolute. For instance, in the criminal context, we allow issues to be raised for the first time on appeal under the fundamental error doctrine. *See State v. Perry*, 150 Idaho 209, 220, 245 P.3d 961, 972 (2010). And although we do not apply the fundamental error doctrine in civil cases, *Ballard v. Kerr*, 160 Idaho 674, 711, 378 P.3d 464, 501 (2016), it is widely held that the preservation requirement is "not inflexible" in civil cases under exceptional circumstances. *See Youakim v. Miller,* 425 U.S. 231, 234, (1976); *Hormel v. Helvering*, 312 U.S. 552, 557 (1941) ("There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below.").

We considered whether an exception was warranted in this case. Foremost, the constitutional concerns implicated by Carver's argument are compelling. To that end, we ordered supplemental briefing on the matter after we found the parties' initial briefing and oral arguments on the issue to be lacking. Further, though it has not been proven that the marriage was a sham perpetrated to deprive the magistrate court of jurisdiction, Carver's allegation to this effect is troubling if true.

Moreover, we are reluctant to hold that the constitutional issue was not preserved since Hornish failed to assert forfeiture as a defense on appeal. Hornish did not address Carver's constitutional argument at all in his respondent's brief and counsel declined to provide a substantive response to the Court's questions about the constitutionality of section 32-202 during oral arguments. When supplemental briefing was ordered Hornish again did not assert forfeiture as a defense, opting instead to take the implausible position that the Court raised the constitutionality of section 32-202 *sua sponte*:

> Here, neither [Carver] nor [Hornish] challenged the constitutionality of Idaho Code section 32-202. Rather, the issue of constitutionality was raised for the first time at oral argument by this Court. It is [Hornish]'s position that the issue of constitutionality is not properly before this Court because it had not previously been raised, at any stage, by either party.

This Court's precedent is clear that this Court will not raise constitutional challenges *sua sponte*. *See In Re Brainard*, 55 Idaho 153, 39 P.2d 769, 771 (1934) ("Based upon firm grounds of public

8

policy, this court has ofttimes reiterated that the constitutionality of an act or statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the case *in which the constitutionality of such statute has been drawn in question.*") Given our precedent and the ease with which the central premise of this argument can be dispelled by reading Carver's opening brief—which contains a section dedicated to the constitutional issue under a bold-lettered subheading—this argument is fallacious.

Nevertheless, we hold this is not a case where an exception to the preservation requirement is warranted. First, although the constitutional issue was clearly raised in Carver's opening brief, her argument was cursory, and she never raised a constitutional argument before the magistrate court. Furthermore, like Hornish's counsel, counsel for Carver did not provide any substantive response to the Court's questions on the issue during oral arguments. In considering whether Carver should benefit from an exception to general requirement of issue preservation, it is significant that once she raised the issue, she failed to seriously press it absent an order from the Court.

In addition, we cannot say that Idaho Code section 32-202 is clearly unconstitutional. Regarding waiver and forfeiture in the federal courts, the Supreme Court of the United States has declined to articulate a "general rule" when arguments that are raised for the first time on appeal should be considered, but it has noted that consideration is appropriate where "the proper resolution is beyond any doubt." *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (citing *Turner v. City of Memphis*, 369 U.S. 350 (1962)).

This leads to another point that strongly counsels against considering Carver's constitutional argument. Declaring section 32-202 unconstitutional would not automatically nullify Daughter's marriage any more than would granting Carver's request for nunc pro tunc relief. To avoid the necessity of an annulment action, we would have to ignore or declare unconstitutional the principles discussed above regarding void and voidable marriages. If we were to do so, we would, in the same stroke, foreclose any opportunity for Husband to protect his own interests by defending against the annulment. We do not suggest that Husband has a protectable interest in marrying Daughter for the purpose of defeating the magistrate court's jurisdiction. But it has not been proven that the marriage was orchestrated for this purpose and the record discloses nothing about the relationship between Daughter and Husband before the marriage, or Husband's decision to marry Daughter, or the relationship between Daughter and Husband since their

9

marriage. Furthermore, even in the absence of a genuine relationship between the two, the marriage may have caused, by operation of law, an entanglement of Daughter's and Husband's legal rights and interests such that prejudice would result if the marriage were suddenly undone in an action to which Husband is not a party. Finally, nothing in Idaho Code section 32-105 suggests a lawful marriage between properly consenting persons can be voided merely because it is a sham marriage or designed to terminate a court's jurisdiction.

In sum, this case presents an important question about the constitutionality of Idaho Code section 32-202, but it is not an appropriate case to answer the question. The issue was not presented below, the arguments of both parties on appeal are lacking, and if we declared the statute unconstitutional it would have no effect unless we also jettisoned the longstanding distinction between void and voidable marriages and imperiled potential rights of Husband. Thus, we decline to consider whether section 32-202 is unconstitutional.

### C. Neither party is entitled to attorney fees on appeal.

Idaho Rule of Family Law Procedure 902 provides that attorney fees may be awarded "when provided for by any statute or contract." I.R.F.L.P 902(a) (formerly I.R.F.L.P. 908). Both parties argue they are entitled to attorney fees under this rule in conjunction with Idaho Code section 12-121. That statute provides, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121.

Carver is not entitled to attorney fees because she is not the prevailing party.

Hornish argues he is entitled to attorney fees because Carver "merely invit[ed] this Court to second-guess the trial court," and she made "no cogent legal argument justifying a reversal of the magistrate's decision." Though Carver's nunc pro tunc argument failed to account for the difference between void and voidable marriages, she raised a legitimate question about the scope of the magistrate court's authority supported by relevant authority. As to the constitutional issue, Carver's initial argument was cursory, but cogent. Therefore, we hold that Hornish is not entitled to attorney fees.

### IV.    CONCLUSION

The decision of the magistrate court dismissing Carver's petition is affirmed. Neither party is entitled to attorney fees. Costs on appeal are awarded to Hornish under Idaho Appellate Rule 40.

10

Chief Justice BEVAN, and Justice ZAHN CONCUR.

MOELLER, J., dissenting.

I acknowledge the well-reasoned and principled positions taken by both the magistrate court and my esteemed colleagues in the majority. They have acted consistently with their view of the law. Nevertheless, I write briefly to dissent from the majority's opinion. Simply put, I believe the trial court had options available to it that would have allowed it to address the outrageous actions of a father who apparently consented to the sham marriage of his 16-year-old daughter ("Daughter") simply to gain an advantage over his ex-spouse in a custody case.

I will limit this discussion to the facts recited by the majority. The record in this case demonstrates that one of the parties in this case, Hornish ("Father"), repeatedly ignored existing court orders and acted unilaterally to undermine the court's authority. Carver ("Mother") had initiated an action to obtain primary physical custody of Daughter. In the midst of this hotly contested custody dispute, Father filed a motion seeking permission to move Daughter to Florida. Although the court had not yet ruled on his motion, and despite the fact that he was scheduled to transfer Daughter back to Mother, Father left for Florida with Daughter. When the hearing on Father's motion took place, Father admitted that he had already removed Daughter from Idaho but promised the court that he would bring her back. Four days later he returned to Idaho with Daughter. At a later hearing, the magistrate court ruled that Daughter should remain in Idaho until trial, which was scheduled to take place in March 2022, about five months later.

On October 28, 2021, Mother filed an emergency motion seeking ex parte relief. Mother alleged that she had been made aware that Father was attempting to arrange a marriage of Daughter with an 18-year-old classmate, apparently in an attempt to frustrate Mother's custody case by emancipating Daughter through marriage. While this motion was pending, but before the magistrate court could sign the proposed order, Daughter was married on November 1, 2021, in Idaho to a different person than the one named in Mother's affidavit. His age is not disclosed in the record. The marriage was only possible because Father had granted permission for his minor child to marry.

Unfortunately, by the time the court eventually granted Mother's motion for ex parte relief on November 5, 2021, the marriage had already taken place. The record suggests that Father must have been aware of the pending motion to halt the marriage at the time he consented to it because the motion was filed three days earlier. Upon hearing Mother's subsequent motions to make the

11

November 5, 2021, order retroactively effective ("*nunc pro tunc*"), the magistrate court concluded that nothing could be done at this point, allowed the marriage to stand, and dismissed Mother's custody action. The majority has affirmed those decisions.

Just as parents are expected to act in their children's best interests, they are also expected to respect the court's role in defining those best interests. Here, Father's actions in this case show a strong proclivity to do neither. At least twice in this case Father acted unilaterally in making decisions for Daughter knowing full well that (1) there were pending motions concerning those decisions, (2) his unilateral actions disregarded Mother's wishes, and (3) his actions frustrated the court's ability to grant relief and enforce its own orders. Importantly, these were not life or death decisions concerning Daughter's health that needed to be made without notice to Mother; rather, these were tactical decisions made to enhance Father's position in the ongoing custody litigation. By so doing, Father has openly flouted the court's role in acting in Daughter's best interests. Additionally, Father has not only made a mockery of our marriage laws, he has also exposed his 16-year-old Daughter to the potential life altering consequences of an ill-conceived and hasty marriage of convenience.

Had the magistrate court granted Mother's request to make the November 5, 2021 order retroactive, it could have appointed counsel for Daughter and set the matter for an immediate evidentiary hearing. An evidentiary hearing would have answered many questions about the parties' intent, their good or bad faith, and allowed the court to make a "best interests" determination concerning Daughter's interests. An evidentiary hearing would likely have given everyone an opportunity to reflect on the magnitude of the hasty decisions made, and whether they should be allowed to stand. Alternatives to emancipation through marriage could have been negotiated. Additionally, it would have allowed time for Mother, acting as the custodial parent, to properly pursue an annulment action under Idaho Code section 32-501. In short, rather than treating Father's unilateral actions as a fait accompli, the trial court could have prevented this outcome if it had reacted accordingly. An evidentiary hearing would likely have clarified the legal issues at stake and created a better record in the event of an appeal.

We have frequently noted that our magistrate judges are endowed with considerable discretion when it comes to child custody questions. *Johnson v. Murphy*, 167 Idaho 167, 169, 468 P.3d 297, 299 (2020) ("Decisions as to the custody, care, and education of the child are committed to the sound discretion of the trial court and they will be upheld on appeal unless there is a clear

showing of abuse of that discretion.") (citing *Martinez (Portillo) v. Carrasco (Mendoza)*, 162 Idaho 336, 345, 396 P.3d 1218, 1227 (2017)) . Such discretion would surely cover the decision of whether a father could consent to a child's marriage when (1) a specific motion is pending on whether to block the father from granting consent and (2) a trial is pending concerning the custody of that child.

While I have few issues with the majority's view of this case, I merely write to illustrate what could have or should have been done in the immediate aftermath of Father's actions. These were actions that appear directly calculated to divest the magistrate court of its jurisdiction to protect a child. Although Idaho Code section 32-202 may have allowed Father to unilaterally consent to the marriage, I do not believe that this ends the discussion. If such consent is granted during a pending child custody action, and under the concerning circumstances present here, I think the court *already charged* with safeguarding the bests interests of the child should have weighed in on the matter. I believe this is especially true where the Father's actions appear to be self-serving in that they granted him a tactical advantage in the pending matter at the expense of his child's welfare.

Therefore, given the special role that our magistrate judges play in adjudicating custody disputes and safeguarding children, I do not believe it would have been an abuse of discretion for the magistrate court—acting in the bests interest of the child and in defending the integrity of the judicial system—to issue its order of November 5, 2021, *nunc pro tunc* and then sort the remaining matters out as outlined. For these reasons, I respectfully dissent.

STEGNER, J., CONCURS.